*609
By the Court,

Savage, Ch. J.
The plaintiffs ask for a new trial on several grounds involving the regularity of the election of the defendants, as trustees of the Bethel Baptist Church, in the city of New-York.
The act to provide for the incorporation of religious societies, 3 Revised Statutes, 292, directs the mode of proceeding to create a corporation, and to continue it. By the third section, which is applicable to this case, it is the duty of the minister, if there be one, to notify publicly the congregation of the time and place of holding an election' for the choice of trustees. The place shall be the church, or place of meeting for divine worship ; the time shall be fifteen days or more after the notice, which is to be given for two successive Sabbaths preceding the day of election. On the day of the election, two of the elders or church wardens shall be chosen to preside as inspectors of the election; if there are no such officers, then two of the members of the church to be nominated by a majority present, shall preside at such election; and the presiding officers shall immediately thereafter certify the names of the persons elected as trustees; which certificate is directed to be acknowledged and recorded. The sixth section provides for the continuation of the corporation: It directs that the trustees first elected shall be divided into three classes, so that one *third may be elected annually. It is made the duty of the trustees, or a majority of them, at least one month before the expiration of office of any of the trustees to notify the same to the minister, or, in case ■of his death or absence, to other officers of the church, specifying the names of the trustees whose times will expire ; and it is made the duty of such minister or other officers, in manner aforesaid, to notify the members of the church of such vacancies, and appoint the time and place for the election of new trustees to fill up the same, which election is to be held at least six days before such vacancies shall happen; and all such subsequent elections are directed to be held and conducted by the same persons, and in the manner before directed. The seventh section declares the qualification of voters at such elections, and makes it the duty of the clerk of the trustees to keep a register of the names of all persons who desire to become stated hearers, with the time when their request was made, and to attend the elections for the purpose of testing the qualifications of electors. ,
It appears by the case, that on the first of January, 1831, an election was held for the choice of two trustees. Two clergymen officiated in this church, and both attended the election; much confusion prevailed; two polls were held in the church at the same time, and two sets of trustees were elected. The defendants received a certificate of their election, and were admitted as members of the board of trustees. The object of this suit is to oust them from their seats.
It seems that for some time previous to the election in question, there were two parties in the church—one denominated the Chace party, consisting of those adhering to Mr. Chace, the clergyman of the church ; and the other opposed to him, denominated the Knapp party: Mr. Knapp taking an active part against Mr. Chace; that Mr. Chace had selected the morning of the day of election as a suitable time to make an address to the scholars of the Sunday school, and thus had assembled a large congregation of persons of all ages and sexes, except that portion of the congregation opposed to himself, and who had worshipped separately from his party, but were members of the congregation, and had a right to participate in the choice of trustees. It seems, too, that he thought *proPer t0 proceed to the choice of trustees, without dismissing his congregation. With a law book in his hand, he said that they would proceed according to law; and stating that he had read the law. *610 he nominated two persons to act, one as moderator, and the other as clerk, and putting the question, declared it carried. The persons thus nominated placed themselves at a table, and were proceeding, as some of the witnesses state, to take votes, when Mr. Knapp and others objected, alleging that they were improper persons to preside. After some confusion, Knapp nominated two of the elders or deacons of the church as inspectors, and put the question, which was carried. A scuffle then ensued for the table, but the moderator and his clerk kept it, though Knapp’s party obtained the balloting box, and retired into a pew, a few feet distant; when both polls were opened, and two sets of trustees were chosen. It seems also, that after the moderator and clerk were chosen, instead of proceeding directly to their business, they read certain church resolutions, which had been passed that morning, and the reading of which was called for by Mr. Chace.
It is impossible to read this case without being struck with the indiscretion (to say the least) with which the business was conducted. A religious exercise upon such an occasion was without precedent in that church, as testified to by one of the witnesses ; and it was probably known that a portion of the congregation were not in the church, and were waiting at the door for the conclusion of the religious exercises ; and yet, without any dismissal of the church, or suspension of business, the pastor, without leaving the pulpit, nominates the officers to preside at the election. He stated that he was about to proceed according to law, and nominated officers in contravention of the law.
Perhaps the circuit judge was right in considering the officers nominated by Mr. Chace, as the presiding and inspecting officers of the election, whatever might be the names given to them ; but if so, why were not the persons designated in the statute selected 1 Such persons were present, and the selection and appointment of any others was improper and illegal. There is no pretence that Mr. Thompson was an elder *of the church; nor do I think that Mr. Hawley was an elder, within the meaning of the statute—he was a preacher, an associate minister with Mr. Chace. I am aware that the clergymen in the Baptist church are called elders, but the statute did not mean the clergy, but subordinate officers, known by that title ; the clergyman has no duty assigned him in conducting the election, but simply to read the notice for two successive Sabbaths. The legislature evidently did not intend or expect any active interference by the clergy; and this case calls for the further remark, that the impropriety of such interference was never more strongly exemplified. As soon as the moderator and clerk were prepared for business, instead of permitting them to take votes for trustees, Mr. Chace insisted on having the resolutions above referred to read; instead of acting as the messenger of peace, he was the first to throw the apple of discord ; “then,” says Mr. Hawley, “ the disturbance began.” But it is not my business to comment upon the conduct of the parties concerned, only so far as it affects the question now before the court.
I have no hesitation in saying that the appointment of Messrs. Hawley and Thompson, as presiding officers, was illegal, unless there had been no elders of the church present; their nomination was objected to, and was altogether improper. The nomination made by Mr. Knapp of two of the elders of the church was not opposed, but was carried ; Messrs. Brown and Verhryck were therefore the only persons regularly appointed presiding officers ; theirs was the only poll regularly open to receive votes, and they were the only persons present, who had a right to certify as the persons chosen. The statute is too clear to admit of a doubt. If there are elders or church wardens present, they and they alone, must be appointed to preside; if there are no such officers, *612 then two of the members of the church may be chosen. The verdict of the jury was right, and in my opinion, is well supported by the testimony; and unless there was some misdirection of the judge, the verdict cannot be disturbed.
I will therefore consider the objections to the decisions and charge of the judge, in the order in which they are presented in the plaintiff’s points. 1. He admittedparoZ proof of the ^number of the electors. The statute makes it the duty of the clerk of the trustees to keep a register of the names of the stated hearers of the church, and of the time when they became so. The object is to test their right to vote, and that is the only use to which the register is required to be put; it does not prevent the introduction of parol proof as to the number of the members of the church. ¡Besides, it did not appear that any such register was in existence. 2. There is surely no weight in the objection to the certificate of the inspectors ; two had been made; one soon after the election, the other some months afterwards; they were alike, and either was sufficient. And I also concur in the opinion that a certificate signed at any time after the election would be proper evidence.
The statute is directory to the presiding officers to certify the result immediately ; but should they refuse or neglect to do so, the church is not to be without officers: the votes of the members cannot thus be rendered ineffectual. 3. The judge stated to the jury that the election was not necessarily void because the notice given by the trustees to the minister was less than one month, &c. and did not contain the names of the trustees whose seats became vacant, and was not announced for two successive Sabbaths provided the election was fairly conducted, and all in fact had notice ; but if the omissions were fraudulently made, or the election had thereby been prejudiced, then the omissions should invalidate the election. All this I think is sound doctrine. In The People v. Runkel, 9 Johns. R. 158, the court say, we must give the statute a reasonable and liberal construction, for the benefit of the churches. See also 6 Cowen, 23. The object of the notice is, that the voters may be fully apprized of the election, and may attend and exercise their rights. There is no pretence in this case that every voter was not present, for they appear to have come from a distance ; the time was well understood, and had been the same for many years. No evil resulted from the omission, if there was any ; no fraud was imputed ; and all parties attended, and thereby admitted notice.
New trial denied.